UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No.: 17-20926-RBR |
| FRANCISCO M. JIMENEZ, | Chapter 7 |
| Debtor. _____/ | |
| SUSAN JOHNSON and<br>STEVEN JOHNSON, | Adv. Case No.: |
| Plaintiffs, | |
| v. | |
| FRANCISCO M. JIMENEZ, | |
| Defendant. _____/ | |

## COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT
## BY CREDITORS SUSAN JOHNSON AND STEVEN JOHNSON

Pursuant to 11 U.S.C. § 523, and Federal Rule of Bankruptcy Procedure 7001, the Plaintiffs Susan Johnson and Steven Johnson (collectively, the "Johnsons"), sue the Defendant Francisco M. Jimenez ("Jimenez"), and allege as follows:

### Parties, Jurisdiction, and Venue

1. This is an adversary proceeding brought by the Johnsons objecting to the dischargeability of debt pursuant to 11 U.S.C. § 523.

2. Jimenez filed this voluntary chapter 7 proceeding on August 29, 2017 (the "Petition Date").

3. This adversary proceeding arises in the chapter 7 case of Jimenez pending before this Court and is commenced pursuant to 11 U.S.C. § 523 and Federal Rule of Bankruptcy Procedure 7001 for a judgment denying the dischargeability of Jimenez's debt to the Johnsons.

1

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. § 157(b)(2)(I).

5. Venue in this District is based on 28 U.S.C. § 1409(a) as a proceeding arising in or relating to a case under the Bankruptcy Code commenced in this District.

6. The Johnsons are creditors of Jimenez. *See* Claim No. 1 filed in the main proceedings on January 9, 2018.

7. Jimenez is the debtor in these proceedings.

## General Factual Allegations

8. Mrs. Johnson was the caregiver for her mother for many years during a protracted illness. In 2005, Mrs. Johnson's mother passed away, leaving Mrs. Johnson with a substantial inheritance of real estate and other funds. Mrs. Johnson wished to invest some of this inheritance to start new business ventures.

9. Jimenez became acquainted with Mrs. Johnson in 2005 through a mutual friend in Ft. Lauderdale, Florida as someone who could assist her with developing new business ventures. Jimenez was represented as someone with extensive marketing experience and good business ideas. During their initial meetings, Jimenez represented that he had held high-level positions with Spaulding, Nike, and AT&T and had significant experience opening, marketing, and operating new businesses for profit.

10. The Johnsons thereafter became friendly with Jimenez and his girlfriend, Ericka Lovato ("Lovato"). In 2006, Jimenez and Lovato moved into Mrs. Johnson's vacant townhouse in Martin County, Florida located in Hobe Sound. At no time did Jimenez and Lovato pay any rent. The Johnsons completed trusted Jimenez and Lovato in every way and treated them like family. At all times material, the Johnsons lived in Hartford, Connecticut.

11. Based on their close relationship and Jimenez's representations about his marketing and business experience, the Johnsons began investing substantial sums with Jimenez in various businesses over the years, all of which were operated in Florida. In each of these businesses, Jimenez and Lovato owned part of the business and Mrs. Johnson was the other owner. Every time, the Johnsons contributed all the necessary funds for the business while Jimenez and Lovato operated the business, with the latters' contribution purportedly being "sweat equity." The

2

funding from one or both of the Johnsons was not just up-front start-up costs, but also operating funds.

12.    The first of these business ventures was Copella which was a digital magazine for women featuring jewelry and key ring accessories. The next was Modus Media Works which developed digital signage and rolling displays. Another was supposed to be a licensing arrangement with 10,000 BC for bottled water. A fourth was KOH Coconut which distributed coconut water. Another business was to market and distribute sunscreen. Another was a sandwich shop in a Valero Gas Station in Port St. Lucie, Florida. Some operated. Some never went beyond the stage of glossy presentations to Mrs. Johnson with name dropping of celebrities who might become involved.

13.    In all, between 2005 and 2010, Mrs. Johnson invested approximately $296,000 in these businesses with Jimenez and Lovato from her mother inheritance, credit lines against real property Mrs. Johnson had inherited from her mother, and from joint family funds with Mr. Johnson.

14.    Between 2005 and 2010, Jimenez and Lovato had a child. Jimenez and Lovato continuously represented to Mrs. Johnson that they were broke despite living for free in Mrs. Johnson's Hobe Sound townhouse. Jimenez and Lovato represented to Mrs. Johnson that they barely could survive because they were working so hard to run these businesses and using all the business revenue to put back into the ventures to keep them afloat. To help the child, Mrs. Johnson set up a Bank of America credit card for Jimenez and Lovato, with Mrs. Johnson as guarantor, so they could support the child. Mrs. Johnson paid the Bank of America credit card bills for many years to assist the child.

15.    None of these businesses operated by Jimenez and Lovato was profitable at any time. No return of any kind was ever provided to the Johnsons, and Johnsons' entire investments were lost.

### Cinagro Freshworks, LLC

16.    Jimenez's next business venture with the Johnsons was an organic food market. Cinagro Freshworks, LLC ("Cinagro") was formed as a Florida limited liability company on or about October 3, 2012 to operate a market, café, and catering business. From its formation and through the present date, Cinagro's three members were Jimenez, Lovato, and Mrs. Johnson.

Jimenez was at all times Cinagro's managing member. Jimenez and Lovato operated and managed the business in every way. Mrs. Johnson was never present in Florida.

17. In early 2013, Cinagro opened its first store on Palm Beach Road in Stuart. The Johnsons solely capitalized Cinagro. In 2012, Mrs. Johnson invested family cash and credit card payments totaling $221,400 into Cinagro. In 2013, Mrs. Johnson invested family cash and credit card payments totaling $157,000 into Cinagro. Jimenez and Lovato contributed no cash or any other tangible personal property to Cinagro. Cinagro had no operating agreement.

18. Jimenez kept and maintained all of the business and financial records of Cinagro while Cinagro was operating, with complete and sole access to, and control over, all of Cinagro's bank accounts. Neither of the Johnsons had any access to the Cinagro bank accounts, financial records, or business records without going through Jimenez.

19. In 2014, Jimenez decided to close Cinagro's Palm Beach Road store and open a new location in Stuart, Florida. Jimenez represented to Mr. Johnson and Mrs. Johnson separately that the new location was "turn-key" with only a coat of paint needed. After the space was rented, the Johnsons discovered that the space was only roughed out. Jimenez represented he had investors to fund the build-out, but ultimately Mr. Johnson agreed to fund the build-out for between $250,000 to $350,000 from his own funds to try to turn the business around and to generate returns and protect the Johnson's now-substantial investment.

20. The build-out funded by Mr. Johnson was not finished until May of 2015. After Cinagro reopened in June of 2015, Jimenez represented several times a week to either one or both of the Johnsons that Cinagro was unable to pay its bills and needed immediate cash infusions to pay its landlord for rent, for payroll for its employees, or to pay suppliers and vendors for food and operating supplies because Cinagro was struggling financially, lacked revenue or money, and was not generating sufficient cash to pay its bills. Based on these representations, Mr. Johnson infused more money into Cinagro.

21. In 2014, Mr. Johnson invested $252,600 in cash and credit card payments to Cinagro. In 2015, Mr. Johnson invested $425,000 in cash in Cinagro. During this time, Mr. Johnson also purchased a 2013 VW Passat for the Johnsons to drive that was supposed to be titled in Cinagro's name, but was instead titled in Lovato's name. Both were supposed to use the VW, but Jimenez leased a luxury Lexus SUV at $800 per month and paid for it out of the Cinagro bank accounts which was unknown to the Johnsons.

4

22. After the June, 2015 opening of the second store, the Johnsons attempted to put a manager and an accounting firm in place to assist Jimenez in his management of Cinagro, but they were not provided with full access to Cinagro's financial books and records, or bank records. Jimenez continued to represent that Cinagro was in financial trouble and in need of more cash.

23. At this time, Mr. Johnson contacted legal counsel who prepared a promissory note in the amount of $860,000, representing Mr. Johnson's full investment in Cinagro, for Jimenez to sign in Mr. Johnson's favor. Jimenez refused, simply stating it was "a lot of money."

24. At this time, without any permission from either of the Johnsons, Jimenez fired the persons the Johnsons had tried to put in place on Cinagro to protect their investment, drained all of Cinagro bank accounts, and financed Cinagro's equipment and receivables and then took the loan proceeds directly for himself. Jimenez then turned Cinagro over to a supplier.

25. The Johnsons subsequently sued Jimenez and Lovato in Martin County Florida Circuit Court. With subpoenas and other ways to start reconstructing what happened, the Johnsons were able to ascertain the following. Unbeknownst to either of the Johnsons, throughout Cinagro's operations between 2013 and 2015, Jimenez and Lovato caused Cinagro to pay hundreds of thousands of dollars from the Johnsons' monetary infusions to Jimenez and Lovato in personal expenses, such as automobile rental, household items, schooling for their child, living expenses, and substantial ATM cash or cashier check withdrawals for which there are no support or back up in any of the Cinagro records. None of these expenses were to or for the benefit of Cinagro. None of these payments were authorized by, or even known to, the Johnsons until years later.

26. Also unbeknownst to the Johnsons, not only was Jimenez draining the assets and the Johnsons' cash infusions from Cinagro for the personal benefit of himself and Lovato as alleged above, Jimenez was failing to pay Cinagro's IRS obligations for employee withholding taxes, State of Florida sales tax that was due, and he was stealing tips from employees.

27. The Johnsons also found out that in 2015, Jimenez was charged by the State of Florida with a felony relating to forging Mrs. Johnson's signature on a document purporting to transfer her interest in Cinagro to Jimenez and Lovato so that just the latter two could sign an application for Cinagro to obtain a beer and wine license. Why Jimenez and Lovato undertook that action when Mrs. Johnson was fully willing and able to sign such documents remains unknown.

28. Also unbeknownst to the Johnsons at the time, the Johnsons discovered that Jimenez lacked any actual marketing, business, or operational experience or skills. The so-called high-end jobs Johnson held with Spaulding, Nike, and AT&T were no more than low-end sales jobs with compensation less than $50,000 per year. In fact, Jimenez's marketing job at AT&T when he first met the Johnsons in 2005 was selling cell-phones to walk-in customers at an AT&T store in a strip mall.

29. The Johnsons also discovered that Jimenez and Lovato had opened up several credit cards either in Mrs. Johnson's name, or in their names with Mrs. Johnson as guarantor, based on the personal information they had of Mrs. Johnson in the Cinagro business files and by living at an address of a residence owned by her. None of this was known to or authorized by Mrs. Johnson. Mrs. Johnson has spent years since 2015 trying to repair her credit and work through having the credit card fraud by Jimenez and Lovato fixed.

30. Based on this investigation, on August 19, 2016, the Johnsons filed a two-count amended complaint against Jimenez and Lovato seeking a judicial dissolution of Cinagro under Florida law (Count I), and for fraud (Count II). The Johnsons ascertained based on the scant material left at Cinagro by Jimenez and Lovato, and the limited investigation they were able to undertake, that Jimenez directly misappropriated at least $126,469.00 of funds contributed by the Johnsons to Cinagro for ATM cash withdrawals and Cinagro counterchecks to Jimenez and Lovato ($71,221.00), payments to their personal credit cards ($24,006.00), Jimenez's and Lovato's personal Amazon charges ($546.00), school charges for their child ($477.00), personal groceries ($7,488.00), personal utility bills ($6,842.00), personal entertainment ($12,552.00), and condominium association fees that they were supposed for pay ($3,337.00).

31. The Johnsons filed a motion for a summary judgment against Jimenez and Lovato in the Martin County Florida Circuit Court action to recover these sums, plus interests and taxable costs for a total of $141,481.88. Two days before the August 31, 2017 hearing on that summary judgment motion, the Debtor filed this bankruptcy. The hearing went forward as to Lovato, with the Martin County Circuit Court entering a final summary judgment against Lovato for this sum, a copy of which is attached as Exhibit "A." Lovato did not appeal entry of this summary judgment, but moved to New Mexico. Collection proceedings are underway in New Mexico where the judgment has been domesticated.

## Count I-Dischargeability Under 11 U.S.C. § 523(a)(2)(A)

32. This is a count to deny the dischargeability of Jimenez's debt to the Johnsons pursuant to 11 U.S.C. § 523(a)(2)(A).

33. Section 523(a)(2)(A) of Title 11 of the Bankruptcy Code provides that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- . . . for money, property, services, or any extension, renewal, or refinancing of credit, to the extent obtained by-- . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]"

34. Jimenez engaged in a large-scale fraudulent transfer scheme from 2012 through 2015 whereby he convinced the Johnsons with various representations of fact he knew to be false to invest upwards of $860,000 into Cinagro for start-up costs, operating expenses, build-out, and other cash-flow needs, and then used those monies by the Johnsons, once contributed to Cinagro, for personal expenses for himself and Lovato. The Johnsons justifiably relied on these false representations, which Jimenez made with the specific intent that the Johnsons rely on them so that he could steal their money from Cinagro after their contributions.

35. At a minimum, Jimenez fraudulently transferred $126,469.00 of the Johnson's funds contributed to Cinagro at his urging for Jimenez's and Lovato's personal benefit as part of a fraudulent conveyance scheme to obtain funds for Cinagro under the guise of capitalization and cash-flow, but actually for the purpose of draining its assets for his own personal benefit.

36. Jimenez obtained at least $126,469.00 from the Johnsons by false pretenses, false representations, or actual fraud.

37. As of the Petition Date, Jimenez is obligated to the Johnsons for at least the amount of $141,481.88, and hundreds of thousands more.

38. Jimenez's obligation to the Johnsons should be deemed non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A).

WHEREFORE the Plaintiffs Susan Johnson and Steven Johnson pray this Honorable Court will enter judgment in their favor and against the Debtor/Defendant Francisco Jimenez deeming that his obligation them in the amount of $141,738.95 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), awarding costs of the filing of this action and granting such other relief as the Court deems just and proper.

## Count II-Dischargeability Under 11 U.S.C. § 523(a)(4)

39. The Johnsons incorporate and re-allege paragraphs 1-31 above.

40. This is a count to deny the dischargeability of Jimenez's debt to the Johnsons pursuant to 11 U.S.C. § 523(a)(4).

41. Section 523(a)(4) of Title 11 of the Bankruptcy Code provides that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--. . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]"

42. Jimenez was a member of Cinagro. Jimenez was the managing member of Cinagro. As such, Jimenez owed statutory and fiduciary duties to Cinagro, to Mrs. Johnson as a fellow member of Cinagro, and to Mr. Johnson as a close friend and investor in Cinagro.

43. Based on their long-term trust that the Johnsons had both placed in Jimenez starting in 2005 and their multiple prior investments and personal dealings, Jimenez was also a fiduciary to the Johnsons. Jimenez sought this trust and accepted it.

44. In connection with his actions with respect to Cinagro, Jimenez was engaged in fraud or defalcation.

45. Jimenez's actions with respect to Cinagro also amount to embezzlement or larceny.

46. As of the Petition Date, Jimenez is obligated to the Johnsons for at least the amount of $141,481.88, and hundreds of thousands more.

47. Jimenez's obligation to the Johnsons should be deemed non-dischargeable pursuant to 11 U.S.C. §523(a)(4).

WHEREFORE the Plaintiffs Susan Johnson and Steven Johnson pray this Honorable Court will enter judgment in their favor and against the Debtor/Defendant Francisco Jimenez deeming that his obligation them in the amount of $141,738.95 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4), awarding costs of the filing of this action and granting such other relief as the Court deems just and proper.

## Count III-Discrageability under 11 U.S.C. § 523(a)(6)

48. The Johnsons incorporate and re-allege paragraphs 1-31 above.

49. This is a count to deny the dischargeability of Jimenez's debt to the Johnsons pursuant to 11 U.S.C. § 523(a)(6).

50. Section 523(a)(6) of Title 11 of the Bankruptcy Code provides that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--. . . for willful and malicious injury by the debtor to another entity or to the property of another entity[.]"

51. Jimenez worked the Johnsons for years to gain their trust based on various false representations about himself and his experience.

52. Jimenez used con artist tactics from day one to steal over $1 million from the Johnsons, including the $126,469.00 that they are presently able to prove.

53. Jimenez bore ill will towards the Johnsons and sought to harm them financially.

54. Jimenez's actions were intentional and deliberate to steal from and to harm the Johnsons. Jimenez's acts were not done merely in reckless disregard of the Johnsons' rights. The purpose of Jimenez's acts was to cause financial injury to the Johnsons, or at least was done with substantial certainty to cause that injury. Jimenez's acts were wrongful and without just cause.

55. As of the Petition Date, Jimenez is obligated to the Johnsons for at least the amount of $141,481.88, and hundreds of thousands more.

56. Jimenez's obligation to the Johnsons should be deemed non-dischargeable pursuant to 11 U.S.C. §523(a)(6).

WHEREFORE the Plaintiffs Susan and Steven Johnson pray this Honorable Court will enter judgment in their favor and against the Debtor/Defendant Francisco Jimenez deeming that his obligation them in the amount of $141,738.95 is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6), awarding costs of the filing of this action and granting such other relief as the Court deems just and proper.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the parties listed below in the manner indicated, on this the ____ day of March, 2018.

**CBR LAW GROUP, LLLP**

/s/ *G. Steven Fender*
G. STEVEN FENDER, ESQ.
Florida Bar No. 060992
Attorney for Plaintiffs
P.O. Box 1545
Ft. Lauderdale, FL 33302
Telephone: (407) 810-2458
Email: steven.fender@cbrlawgroup.com

Via US Mail:

Francisco Jimenez

12499 Classic Drive

Coral Springs, FL 33071


Chad Van Horn, Esq.

330 N. Andrews Avenue, Suite 450

Ft. Lauderdale, FL 33301

Filing # 61213246 E-Filed 08/31/2017 03:44:04 PM

IN THE CIRCUIT COURT OF THE
19TH JUDICIAL CIRCUIT, IN AND
FOR MARTIN COUNTY, FLORIDA

CASE NO.:   15-940-CA
JUDGE:      BRONIS

SUSAN M. JOHNSON and STEVEN B.
JOHNSON,

     Plaintiff,

v.

CINAGRO FRESHWORKS, LLC,
MR. FRANCISCO JIMINEZ, and
MS. ERICKA LOVATO,

     Defendants.
_____/

### ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY FINAL JUDGMENT AGAINST DEFENDANT ERICKA LOVATO ON COUNT II- ACTION FOR FRAUD

**THIS CAUSE**, having come before the Court on August 31, 2017, on the Plaintiff, Steven B. Johnson's "Motion for Summary Final Judgment against Defendants Francisco Jimenez[1] and Ericka Lovato on Count II- Action for Fraud," and the Court having reviewed the court file, the Plaintiff's Motion, the summary judgment evidence, and being otherwise duly advised in the premises, now therefore the Court hereby **FINDS**:

1. Defendant, Ericka Lovato was duly and properly served with legal process in this matter and she appeared in this case through her former attorney.

2. The Court entered a Court's Default against Ms. Lovato when she failed to respond to Plaintiff's Amended Complaint.

---

[1] This Motion was directed to both Defendants. Mr. Francisco Jimenez filed a Suggestion of Bankruptcy. Accordingly, this order does not pertain to him.

1 of 3

3. Defendant did not file any affidavits or anything else in opposition to Plaintiff's Motion for Summary Judgment.

4. Based upon the summary judgment evidence, there is no genuine issue as to any material fact, and Plaintiff is entitled to a judgment as a matter of law, against Defendant, Ericka Lovato.

5 Plaintiff, Steven B. Johnson is entitled to recover from the Defendant, Ericka Lovato, the total amount of $ 126,469.00 in principal, plus pre-judgment interest on that sum from August 20, 2015, (the date this lawsuit was filed) through the date of the Summary Final Judgment, August 31, 2017, at 5.17% totaling $ 13,289.22 , plus taxable court costs of $ 1,723.66 for a total sum of $ 141,481.88.

**NOW THEREFORE IT IS HEREBY**:

**ORDERED AND ADJUDGED** that the Plaintiff's Motion for Summary Judgment is hereby GRANTED against Defendant Ericka Lovato. It is further,

**ORDERED AND ADJUDGED** that Summary Final Judgment is hereby entered in favor of the Plaintiff, Steven B. Johnson, whose address is 7 Hoccanum Road, Marlborough, CT 06447 for the total sum of $ 141,481.88 and against Defendant Ericka Lovato, whose last known address is 18647 SW 7th Street, Pembroke Pines, FL 34994, (Social Security # unknown) for which sum let execution issue forthwith and without delay, all of which shall bear interest at the statutory rate of interest until satisfied. It is further,

**ORDERED AND ADJUDGED** that the Judgement Debtor, Ericka Lovato, shall complete Florida Rule of Civil Procedure Form 1.977(a) (Fact Information Sheet), and shall serve it upon the Judgment Creditors' attorney along with all required attachments within 45

days of the date of this Judgment. It is further,

**ORDERED AND ADJUDGED** that the Court retains Jurisdiction of this case to enter such further orders as are necessary, just and proper, including enforcement this Judgment.

**DONE AND ORDERED**, in chambers in Stuart, Martin County, Florida.

3:38 pm, Aug 31 2017

_____
Barbara W. Bronis, Circuit Court Judge

**Copies furnished to**

Cinagro Freshworks, LLC.
710 South Colorado Avenue
Stuart, FL 34994

Spiegel & Utrera, PA
1840 SW 22nd Street
4th Floor
Miami, FL 33145

Francisco Jiminez a/k/a Francisco Jimenez
18467 SW 7th Street
Hollywood, FL 33029-6001
fmjworks@gmail.com

Michael J. McCluskey, Esquire
Fox, Wackeen, Dungey
3473 SE Willoughby Blvd.
Stuart, FL 34995

Ericka Lovato
18647 SW 7th Street
Pembroke Pines, FL 34994

STATE OF FLORIDA
MARTIN COUNTY
THIS IS TO CERTIFY THAT THE FOREGOING ___ PAGE(S) IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT AS FILED IN THIS OFFICE
CAROLYN TIMMANN, CLERK
BY: _____ D.C
DATE _____